IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| YULANDA DAVIS, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case.No.: 5:07-CV-2137-JHH |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Yulanda Davis, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and her application for Supplemental Security Income ("SSI") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.  Proceedings Below**

Plaintiff filed her applications for DIB and SSI protectively on July 27, 2005, alleging a disability onset date of September 30, 2004. (R. 42-47, 53-57, 347-51, 357). Plaintiff has met the insured status requirements of the Act through December 31, 2009. (R. 16).

Plaintiff's applications were denied initially in January 2006. (R. 26-30). On January 26, 2006, Plaintiff timely filed a request for a hearing, (R. 33), which was held before an Administrative

Law Judge ("ALJ") on April 25, 2007, in Cullman, Alabama. (R. 35-36, 358-401). Plaintiff and Vocational Expert ("VE") Karen Vessell provided testimony at the hearing. (R. 362-400).

In the June 7, 2007 decision, the ALJ determined that Plaintiff was not eligible for DIB or SSI because she was not under a "disability," as defined by the Act, at any time before the date of decision. (R. 11-23). Thereafter, on July 6, 2007, Plaintiff requested review of the ALJ decision by the Appeals Council. (R. 8-9). After the Appeals Council denied Plaintiff's request for review on September 22, 2007, (R. 5-7), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing decision, Plaintiff was forty-five years old, a "younger" individual pursuant to 20 C.F.R. § 416.963, with an eighth grade, limited education. (R. 263, 363). Plaintiff has past relevant work experience as an office manager (skilled, sedentary exertional level), housekeeper (semi-skilled, medium exertional level), cashier (unskilled, light exertional level), retail manager (skilled, light exertional level), and commercial cleaner (unskilled, heavy exertional level). (R. 87-94, 385-86).

Plaintiff claims that since her alleged onset date of September 30, 2004, she has been unable to work primarily due to disc problems and complications of treatment for that condition, including a staph infection that developed after a diskogram. (R. 43, 18). Plaintiff also claims that she suffers from depression.

At the hearing, Plaintiff ranked her pain, while resting, as a "7" or "8" on a scale of 1-10. (R. 374). Plaintiff reported that if she stands "too long my back hurts really bad, and my left leg will start tingling and burning." (R. 366). She estimated that she can stand for thirty minutes at a time, sit for thirty minutes at a time, and walk half a block before she needs to sit. (R. 366-67).

Plaintiff testified that she drives her son "to school from time to time in the morning, or either," although she sometimes lets him drive her car. (R. 367). Although capable of some things around the house, almost all the chores and cooking are performed by a live-in friend. (R. 367). Plaintiff is able to shower and fix a simple meal for herself. (R. 368).

Plaintiff testified that she regularly naps during the day to relieve the pain in her back. (R. 366). She also stated that her prescribed pain medication Lortab makes her drowsy, and that she has difficulty sleeping at night, both of which contribute to her need for naps. (R. 368-69, 373-74). Plaintiff testified that she suffers from memory loss and sour stomach as a result of the staph infection that developed in her lower back. (R. 373).

## II.     ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner

finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on September 30, 2004. (R. 16, Finding No. 2). He also found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be "severe" in combination: L5-S1 discitis and depression. (R. 16, Finding No. 3). Nevertheless, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 16, Finding No. 4). According to the ALJ, Plaintiff's subjective complaints concerning her alleged impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 18).

Moreover, the ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform light work, with certain limitations including standing, sitting, and/or walking six of eight hours; only occasionally balancing, stooping, kneeling, crouching, crawling, overhead reaching, and climbing of ramps and stairs; and no working around ladders, ropes, scaffolds, hazardous machinery, or unprotected heights. (R. 17, Finding No. 5). In addition, the ALJ found that Plaintiff can

concentrate for two-hour periods of time on simple, repetitive tasks and can assemble for an eight-hour day. (R. 17, Finding No. 5). The ALJ noted that she will show some mildly irritable distractability if required to work in close quarters, but he opined that the effect will fade with exposure. (R. 17, Finding No. 5). She can also be expected to miss one day of routine duties each month due to her psychiatric disorder, and he noted that any contact with the general public should be brief, simple, and non-confrontational. (R. 17, Finding No. 5). Finally, the ALJ found that Plaintiff can be expected to adapt to workplace changes if they are simple, gradual, and implemented gradually. (R. 17, Finding No. 5).

The ALJ sought testimony from VE Karen Vessell at the administrative hearing, and he posed several hypothetical questions to her regarding different scenarios of functional capacity. (R. 387-88). With her help, the ALJ determined that Plaintiff is unable to perform any of her past relevant work, (R. 21, Finding No. 6; R. 387-88), but he concluded that Plaintiff could perform other jobs at the light exertional level which exist in significant numbers in the national economy, including occupations such as printing machine operator, small parts assembler, and mail sorter. (R. 21, Finding No. 10; R. 389). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 22, Finding No. 11).

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 10, at 15-16). Plaintiff's arguments to this court center on one principal contention: she believes that the ALJ's decision is not supported by substantial

evidence and improper legal standards were applied because the ALJ improperly discredited her subjective complaints under the Eleventh Circuit "pain standard." (Doc. # 10, at 14-15).

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

Against that backdrop of applicable standards, the court rejects Plaintiff's request for remand and/or reversal. The sole argument advanced by Plaintiff to this court is that the ALJ erroneously discounted her subjective complaints of pain. She points out that, according to the VE, had the ALJ given full credit to her testimony, work would be precluded. (Doc. # 10, at 14 (referring to R. 392)). She is also particularly concerned that the ALJ's determination of disability did not take into account the side effects of her pain medication, most notably drowsiness. (Doc. # 10, at 15). As outlined below, the court has carefully reviewed the ALJ's decision and the record in this case and finds no error in the ALJ's decision to discount Plaintiff's subjective complaints in accordance with the Eleventh Circuit "pain standard."

It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at

1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the ALJ's analysis comports with the requirements of the pain standard for evaluating Plaintiff's subjective complaints, indicating that proper legal standards were applied in his analysis. The ALJ cited to both 20 C.F.R. § 404.1529 and the interpretive Eleventh Circuit caselaw outlining the pain standard, and he considered Plaintiff's symptoms and subjective complaints in light of the steps outlined therein. (R. 17-18). The ALJ determined that Plaintiff does suffer from underlying medical conditions that could reasonably cause her alleged symptoms. (R. 17-21). However, he found that her statements concerning the intensity, persistence, and limiting

effects of those symptoms are not entirely credible, nor are those conditions of such severity that they could reasonably be expected to give rise to the magnitude of her alleged pain. (R. 17-21). The ALJ ultimately credited Plaintiff's allegations of symptoms and limitations only to the extent that they are consistent with the performance of a limited range of light work, as described in the ALJ's RFC assessment.

The ALJ not only applied proper legal standards when discrediting Plaintiff's subjective complaints, but his decision is supported by substantial evidence: First, the ALJ conducted a thorough review of the opinions of Plaintiff's treating and examining sources before determining that Plaintiff's subjective complaints were not consistent with the objective evidence. (R. 17-21). *See* C.F.R. § 404.1529(c)(2). Second, the ALJ's decision is also bolstered by discrepancies in Plaintiff's own testimony as to the disabling effects of her condition. The court will analyze both of these components below.

    **A.**    **Assessment of the Medical Evidence of Record**

The medical evidence reveals that Plaintiff originally injured her back in 2003 while working. She first presented with back pain to Dr. Mark Tafazoli in August 2003, and an examination revealed a positive straight leg raise test and tenderness to palpation along the lumbar spine. (R. 125-27). X-rays showed an L5-S1 disc space disparity with a possible pinched nerve. (R. 127). A non-contrasted MRI of the lumbar spine showed normal disc spaces with no herniation or narrowing seen and no bulge or focal protrusion identified. (R. 125, 147). Plaintiff continued to see Dr. Tafazoli through early December 2003. (R. 125).

During the time she was seeing Dr. Tafazoli, Plaintiff was also being treated by Dr. Steve Fuller for complaints of lumbar pain and radiating right hip pain. In October 2003, after an

examination of the lumbar spine revealed decreased flexion, extension, rotation, and side bending with increased paravertebral muscle tenderness, Dr. Fuller diagnosed Plaintiff with right sacroiliac dysfunction, lumbar radicular pain, right hip bursitis, and cervical strain. (R. 141-43). He prescribed Lortab for pain and administered two Kenalog/Marcaine injections in her right sacroiliac joint. (R. 141-43).

Thus, in October 2003, Dr. Fuller recommended the following work restrictions: limited bending, stooping, and extended walking with a twenty-pound lifting limitation. (R. 142-43). Two months later in December 2003, a functional capacity evaluation ("FCE") performed by Encore Rehabilitation found that Plaintiff was capable of performing physical work at the light level for an eight-hour day. (R. 262-63). However, Dr. Fuller's restrictions continued into January 2004 when he opined that she had reached maximum medical improvement with no permanent impairment. (R. 137).

A CT scan completed in March 2004 showed that Plaintiff had a mild disc bulge at L3-L4 with no evidence of nerve root impingement. (R. 135, 145). Thus, Dr. Fuller's final diagnosis of Plaintiff in April 2004 was right sacroiliac dysfunction, lumbar radicular pain, cervical strain, and left rotator cuff tendinitis. (R. 129).

In August 2004, Dr. Martin Jones reported that x-rays showed no evidence of abnormality in Plaintiff's lumbar spine, and a CT myelogram was essentially normal. (R. 205). Dr. Jones concluded that surgery would not help Plaintiff's symptoms. (R. 205).

In September 2004, Plaintiff began treatment for back and leg pain with Dr. David Cosgrove at PainSouth in Birmingham, Alabama, and Dr. Cosgrove prescribed pain medication. (R. 155). When she returned in October 2004, Plaintiff rated her pain as a "5" to "7" on a scale of 1-10 and

reported that her pain was relieved somewhat with a heating pad and warm baths. (R. 155). Upon examination, her straight leg raise test was negative bilaterally, and her lumbar spine was felt to be normal with some tenderness. (R. 155). Dr. Cosgrove opined that her continuing leg pain might be caused by chemical radiculitis secondary to a small annular tear in her disc. (R. 155).

In December 2004, Dr. Cosgrove reported Plaintiff appeared quite comfortable sitting and standing and was able to get on and off the examination table without difficulty. (R. 151). By then, her range of motion was essentially full, her lower extremities were normal, and her straight leg raising test was negative. (R. 151). Her previous CT and MRI studies showing mild disc bulge at L3-4 and L4-5 were discussed with her, and a diskogram was recommended to rule out a leak or tear at either of those levels. (R. 151).

Dr. Cosgrove performed a diskogram on January 10, 2005, after which Plaintiff complained of worsening pain. (R. 148-150). When Plaintiff presented again to Dr. Cosgrove in April 2005, she was taking the Lortab and Flexeril prescribed by Dr. Martin Jones, and she complained of hip pain. (R. 148). No neurological or sensory deficits were noted. (R. 148). An MRI performed on April 29, 2005, revealed discitis and osteomyelitis at L5-S1 and enhancement of the paravertebral and epidural soft tissues which could be reactive or represent direct involvement. (R. 157). No phlegmon or abscess was noted. (R. 157).

Based upon the questionable area of discitis revealed by the MRI, and because her pain continued despite conservative management, Plaintiff was admitted to Brookwood Medical Center hospital on May 19, 2005, for biopsy and administration of IV antibiotics. (R. 163). Plaintiff was treated successfully with IV Vancomycin, and her discharge diagnosis was discititis at L4-S1 and mild disc bulge at L3-4. (R. 163, 190-95, 303, 305). Notably, Plaintiff told doctors at the hospital

that she had been very physically active prior to developing pain in her back and buttocks a couple of months earlier. (R. 161, 310).

Following her discharge from Brookwood, Plaintiff was followed by Dr. Mark Mulligan at Birmingham Infectious Disease, LLC, whom she had first seen upon her admission to the hospital. (R. 199).  After the test results from her biopsy were finalized on June 9, 2005, Plaintiff was diagnosed with L5-S1 disc-centered process, MRSE and Group B Strep on bone culture, status post diskogram, and lumbar spine degenerative disease. (R. 196-97).  As of June 27, 2005, Plaintiff had nearly completed her six-week course of antibiotic therapy and was much improved.  (R. 196-97). Dr. Mulligan opined that any remaining back pain was due to her degenerative back disease and possibly further degenerative change related to the infection. (R. 195).

During this same time, Plaintiff continued treatment by Dr. Martin Jones. On July 28, 2005, an MRI revealed degenerative disc disease with no evidence of disc herniation or stenosis in Plaintiff's lumbar spine. (R. 211).  In both June and August, 2005, Dr. Jones certified that he believed Plaintiff was unable to return to work. (R. 300, 301).

In August 2005, Plaintiff was evaluated by Dr. Michelle D. Turnley for complaints of persistent back pain.  (R. 345). Dr. Turnley found no evidence of muscle spasm in Plaintiff's back, but she found her range of motion to be significantly diminished, and she recommended physical therapy and an FCE. (R. 224, 345). In September 2005, Dr. Turnley reported physical therapy had given Plaintiff only limited benefit. (R. 220, 343). On examination, Plaintiff walked with a slight antalgic gait and had limited range of motion in her lumbar spine. (R. 343).

In November 2006, Dr. Turnley performed an FCE and recommended that Plaintiff return to light duty with no repeated forward bending, no heavy lifting, and no sliding. (R. 342). She advised that Plaintiff be in a light work category with regard to lifting. (R. 342).

In a Pain Questionnaire completed in October 2005, Plaintiff reported that her pain was relieved by medication for four to six hours at a time. (R. 101-02).[1] She also stated that she was able to attend pool therapy three times a week, walk for approximately fifteen minutes at a time, shop for light items, dust, and drive short distances. (R. 101-02). Later in December 2005, Plaintiff indicted that she was able to do light household chores, including folding laundry and ironing with help setting up the ironing board. (R. 104).

Plaintiff was consultatively examined by two physicians in December 2005. First, upon examination by Dr. Bharat Vakharia, Plaintiff was diagnosed with low back pain with radiculopathy, fatigue, and a history of mitral valve prolapse. (R. 227-31). Dr. Vakharia's examination revealed 70 degrees straight leg raising bilaterally; tenderness in the lumbo-sacral spine; no gross sensory motor loss in the lower limbs; full range of movement in both knees; rotary movement of both hips minimally limited due to back pain; and forward flexion of the spine of 45 degrees. (R. 228-29).

The second consultative examiner was Dr. Jack Bentley, who focused on Plaintiff's depression, which he described as worse during the ongoing holiday season due to the recent death of her husband in July 2005. (R. 232-35). Plaintiff had never sought psychiatric treatment nor been prescribed medication for her depression. Her Axis I diagnosis was moderate to severe depressive disorder and nicotine dependence. (R. 232). On examination, Plaintiff was alert and oriented,

---

[1] The effectiveness of medication on her pain was also confirmed by Plaintiff at the administrative hearing, where she testified that the medication makes her drowsy, but does relieve her pain. (R. 374).

although Dr. Bentley noted Plaintiff's numerous pain related behaviors during the course of the examination and that she appeared severely depressed. (R. 232-35). However, he opined that she would be capable of managing funds. (R. 232-35).

In January 2006, Dr. Eugene Fleece completed a mental RFC assessment on Plaintiff. In determining the degree of limitation imposed by Plaintiff's depression, Dr. Fleece noted moderate limitations in several areas but no marked limitations in any listed areas of functioning. (R. 236-39). Dr. Fleece opined that Plaintiff could concentrate for two-hour periods on simple repetitive tasks and could assemble an eight-hour day. (R. 238). He noted that Plaintiff might show some irritable distractability if required to work in close quarters but that this would fade, and he expected that she would miss one day a month from work due to her psychological disorder. (R. 238). Dr. Fleece recommended that contact with the public should be brief, simple, and non-confrontational and that Plaintiff could adapt to work place changes if such were implemented gradually. (R. 238).

Dr. Fleece also submitted a Psychiatric Review Technique which analyzed the severity of Plaintiff psychiatric problem under 20 C.F.R. Part 404, Subpart P, App. 1, Sec. 12.04 (Affective Disorders). Briefly summarized, the report stated that Plaintiff suffers from depression and bereavement, but that the degree of functional limitation necessary for that condition alone to be disabling was lacking. (R. 240-53).

At that same time, Dr. Stuart Stephenson completed a physical RFC assessment on Plaintiff (R. 254-61). Dr. Stephenson indicated that Plaintiff has the functional capacity to perform the demands of light work with some restrictions as to climbing (never on ladders, ropes or scaffolds), balancing, stooping, kneeling, crouching, crawling, and reaching. (R. 255-56).

As evidenced by the medical evidence outlined above, the ALJ's decision to discredit Plaintiff's subjective complaints to the extent they are inconsistent with the performance of a limited range of light work is well-founded. As the record indicates, an FCE conducted shortly after Plaintiff's 2003 back injury demonstrated that Plaintiff was capable of performing light work. (R. 262-63). By January 2004, Plaintiff had reached maximum medical improvement with no permanent impairment, (R. 137), and by December 2004, Plaintiff appeared to be comfortable sitting and standing and was able to get on and off an examination table without difficulty. (R. 151). Although Plaintiff developed an infection after undergoing a diskogram in January 2005, the infection resolved by July 2005. After a second FCE in November 2005, which was notably consistent with the results of Plaintiff's previous FCE in December 2003, Dr. Turnley advised that Plaintiff could return to light work with no repeated forward bending, no heavy lifting, and no sliding. (R. 342). The ALJ appropriately agreed, with modifications that were recommended on the January 2006 RFC assessments completed by consultative doctors. (R. 20).

**B.    Discrepancies in Plaintiff's Representations of her Limitations**

The ALJ's decision to discredit Plaintiff's assertion that she cannot work at all is also supported by discrepancies in Plaintiff's testimony as to the disabling effects of her condition. As noted earlier, Plaintiff testified at the hearing that her pain, while resting, is a "7" or "8" on a scale of 1-10. (R. 374). She estimated that she can stand for thirty minutes at a time, sit for thirty minutes at a time, and walk half a block before she needs to sit. (R. 366-67). Plaintiff also testified that her regular naps, which are a result of back pain, difficulty sleeping at night, and drowsiness as a medication side effect, prevent her from working. (R. 366-69, 373-74).

Plaintiff's earlier statements about her ability to function, however, paint a different picture of her condition. In October 2005, Plaintiff reported that her activities included going to pool therapy three times a week, and she noted that she was able to walk for approximately fifteen minutes at a time, shop for light items, dust, and drive short distances. (R. 101-02). At that time, Plaintiff stated (and later confirmed at the hearing) that her pain is relieved by medication for four to six hours at a time. (R. 101-02, 374). In December 2005, Plaintiff indicted she was able to do light household chores, including folding laundry and ironing with help setting up the ironing board. (R. 104). Thus, although the ALJ acknowledged Plaintiff's testimony that her medication makes her drowsy, he did not find Plaintiff's testimony to be persuasive in light of the record as a whole. (R. 18).

While it is clear in this Circuit that "participation in everyday activities of short duration" does not mean that a claimant is not disabled, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), such activities are relevant to the matter of Plaintiff's credibility, *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005) (finding that ALJ properly considered claimant's daily activities, frequency of symptoms, medications, and found subjective complaints were inconsistent with plaintiff's medical record); *Graham v. Apfel*, 129 F.3d 1420, 1421-22 (11th Cir. 1997)(reasoning that activities such as child care, attending school, and performing household chores supported ALJ's conclusion that Plaintiff could perform light work). Thus, those discrepancies in Plaintiff's testimony regarding her daily functioning, especially when considered in combination with the objective medical evidence of record, provide additional support for the ALJ's decision to discount Plaintiff's testimony that she is totally disabled.

**VI.** **Conclusion**

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___23rd___ day of January, 2009.

*James H. Hancock*
SENIOR UNITED STATES DISTRICT JUDGE